UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                 )
JEFFREY MYRICK,                  )
                                 )
            Plaintiff,           )
                                 )  Civil Action No. 15-1451
      v.                         )
                                 )
JEH CHARLES JOHNSON,             )
                                 )
            Defendant.           )
_____)

**MEMORANDUM AND OPINION**

Plaintiff Jeffrey Myrick ("Plaintiff") is a Special Agent employed by Immigration and Customs Enforcement ("ICE"), in the Homeland Security Investigations ("HSI") division. On January 7, 2015, Plaintiff requested certain documents from the U.S. Department of Homeland Security ("Defendant") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Complaint for Injunctive Relief ("Compl."), ECF No. 2, ¶ 5. Specifically, Plaintiff sought information "pertaining to Special Agent/Program Manager Chris Watkins of the Certified Undercover Operation in Fairfax, VA at the Cyber Crimes Center named 'Operation Coverall,'" as well as other logistical information regarding the undercover operation. *Id*. On February 25, 2016, Defendant filed a Motion for Summary Judgment, arguing that it is exempt from acknowledging the existence

1

or non-existence of the records under FOIA Exemptions 6, 7(C), and 7(E). For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

## I. Background

Plaintiff's FOIA request sought documents pertaining to the relevant undercover operation "to ascertain whether his then-first level supervisor and Defendant's agent, Sjon Shavers, Section Chief, Cyber Crimes Unit, engaged in employment discrimination on account of Plaintiff's race." Compl. ¶ 3. When Plaintiff did not receive the requested information more than seven months later, he filed suit on September 4, 2015. *Id.* ¶¶ 6-7. On January 13, 2016, Defendant informed Plaintiff that it could "neither confirm or deny the existence of records responsive to [Plaintiff's] request," and that if they existed, "they would be exempt from disclosure pursuant to FOIA Exemptions 6, 7(C), and/or 7(E)." Declaration of Fernando Pineiro ("Pineiro Decl."), ECF No. 11, Ex. 2.

Defendant filed a Motion for Summary Judgment on February 25, 2016, arguing that it is exempt from acknowledging the existence or non-existence of the records under Exemptions 6, 7(C), and 7(E). Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp"), ECF No. 11 at 5, 8. Accordingly, Defendant attached an affidavit, the Pineiro

Declaration, asserting that this response was necessary to avoid disclosing information that could cause an "unwarranted invasion of privacy" under Exemptions 6 and 7(C) or "could reasonably be expected to risk circumvention of the law" under Exemption 7(E). Pineiro Decl., Ex. 2, ¶¶ 20, 25.

## II. Legal Framework

### A. Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment should be granted if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Freedom of Information Act

FOIA requires agencies to disclose all requested agency records unless one of nine specific statutory exemptions applies. 5 U.S.C. § 552(a). FOIA is designed to "pierce the veil of administrative secrecy and to open

agency action to the light of public scrutiny." *Dep't of Air Force v. Rose,* 425 U.S. 352, 361 (1976) (citations omitted). "Given the FOIA's broad disclosure policy, the United States Supreme Court has 'consistently stated that FOIA exemptions are to be narrowly construed.'" *Wolf v. CIA,* 473 F.3d 370, 374 (D.C. Cir. 2007) (quoting *Dep't of Justice v. Julian,* 486 U.S. 1, 8 (1988)).

"FOIA's 'strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." *Dep't of State v. Ray,* 502 U.S. 164, 173 (1991). The government may satisfy its burden of establishing its right to withhold information from the public by submitting appropriate declarations and, where necessary, an index of the information withheld. *See Vaughn v. Rosen,* 484 F.2d 820, 827–28 (D.C. Cir. 1973). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *ACLU v. Dep't of the Defense,* 628 F.3d 612, 619 (D.C. Cir. 2011) ("[A]n agency's justification for invoking a FOIA exemption is sufficient

4

if it appears 'logical' or 'plausible.'") (internal citations omitted).

### III. Analysis

Defendant argues that acknowledging whether the records exist would disclose the existence or non-existence of the specific undercover operation, its subject matter, and its personnel and thus "increase[ ] the likelihood that subjects and potential subjects of investigations will develop methods to obscure their criminal conduct, and thereby circumvent law enforcement," in contravention of Exemption 7(E). Def.'s Mem. Supp. at 8-9. In response, Plaintiff claims that Defendant "has not logically shown how the acknowledgement of the records could be reasonably expected to risk circumvention of the law" because he "has not shown how acknowledging that a[n] undercover operation exists would increase the knowledge of any supposed criminal actors." Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), ECF No. 12 at 13.

Information may be withheld under FOIA Exemption 7 if it was compiled for law enforcement purposes. 5 U.S.C. § 552(b)(7). ICE HSI is an entity in the Department of Homeland Security tasked with investigating a wide range of criminal activity. Pineiro Decl. ¶¶ 11-12. The requested records "would necessarily be ICE records compiled for the

5

purpose of ICE's responsibilities to enforce the civil and criminal laws under its authorities." Pineiro Decl. ¶ 24.

Exemption 7(E) exempts information collected for law enforcement purposes that

> would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7)(E). In other words, Exemption 7(E) "exempts from disclosure information that could increase the risks that a law will be violated or that past violators will escape legal consequences," not merely information that expressly "instruct[s] [potential violators] how to break the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193, 1194 (D.C. Cir. 2009) (emphases omitted). It "only requires that the [agency] 'demonstrate [ ] logically how the release of [the requested] information might create a risk of circumvention of the law.'" *Id.* at 1194 (quoting *PHE v. Dep't of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993)). Exemption 7(E) is properly invoked for information and techniques that are secret and "not generally known to the public." *Nat'l Sec. Archive v. FBI*, 759 F. Supp. 872, 885 (D.D.C. 1991); *Jaffe v. CIA*, 573 F. Supp. 377, 387 (D.D.C. 1983).

"An agency asserts a *Glomar* response when it refuses to confirm or deny the very existence of responsive records."[1] *Mobley v. CIA*, 806 F.3d 568, 584 (D.C. Cir. 2015). In the context of a FOIA exemption, "an agency may issue a *Glomar* response . . . if the particular FOIA exemption at issue would itself preclude the acknowledgment of such documents." *Elec. Privacy Info. Ctr. v. NSA* ("*EPIC*"), 678 F.3d 926, 931 (D.C. Cir. 2012) (citing *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). "In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Wolf*, 473 F.3d at 374. In the case of Exemption 7(E), therefore, a *Glomar* response is appropriate when confirming or denying the existence of the requested records "could reasonably be expected to risk circumvention of the law." *See* 5 U.S.C. § 552(b)(7)(E); *EPIC*, 678 F.3d at 931.

---

[1] As Defendant explains, the *Glomar* response "take[s] its name from the *Hughes Glomar Explorer*, a ship built (we now know) to recover a sunken Soviet submarine, but disguised as a private vessel for mining manganese nodules from the ocean floor." Def.'s Mem. Supp. at 3 (quoting *Bassiouni v. CIA*, 392 F.3d 244, 246 (7th Cir. 2004) and citing *Phillipi v. CIA*, 546 F.2d 1009, 1013 (D.C. Cir. 1976)).

Defendant has demonstrated logically why its *Glomar* response is appropriate under Exemption 7(E). The Pineiro Declaration states:

> If criminal actors were to learn that a particular ICE HSI office is not engaged in specific undercover operations, the criminal actors could conclude that there is less risk of certain activities being discovered by law enforcement in that jurisdiction. Likewise, if criminal actors know that a particular office, and particular personnel, [are] involved with undercover operations, the criminal actors could adjust their activities in a way to avoid that office's undercover activities.

Pineiro Decl. ¶ 20. Like in *Jaffe*, where the government appropriately invoked Exemption 7(E) as to portions of documents that "assertedly relate to law enforcement procedures not known to the public," here, Defendant's *Glomar* response is authorized under Exemption 7(E) because an undercover operation is not known to the public and acknowledging its existence or non-existence would therefore increase the risk of circumvention of the law. *See* 573 F. Supp. at 387.

Plaintiff asserts that "Defendant has not shown how acknowledging that a[n] undercover operation exists would increase the knowledge of any supposed criminal actors." Pl.'s Opp'n at 13. Defendant correctly points out in its reply that Plaintiff fails to "[rebut] the showing made by

8

Defendant in the Pineiro declaration" and rather makes "conclusory, single-sentence assertions." Def.'s Reply at 4. The Pineiro Declaration provides a thorough explanation of the potential 7(E) risks of acknowledging the existence or non-existence of the undercover operation, and Plaintiff does not offer any facts that indicate "contrary evidence in the record" or "evidence of agency bad faith." *See ACLU*, 628 F.3d at 619. Exemption 7(E) only requires a logical demonstration of the *risk* that the law would be circumvented, and Defendant has met this standard. *See Mayer Brown*, 562 F.3d at 1194. Therefore, there is no genuine dispute as to the appropriateness of Defendant's *Glomar* response under Exemption 7(E).[2]

## IV. Conclusion

For the foregoing reasons, the information sought by Plaintiff is properly withheld under FOIA Exemption 7(E) and the *Glomar* doctrine. Defendant's Motion for Summary Judgment is **GRANTED**.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
            **United States District Judge**
            **August 4, 2016**

---

[2] Because the parties' dispute is fully resolved under Exemption 7(E), the Court need not discuss the parties' arguments under Exemptions 6 or 7(C).